FILED

2012 Nov-05  AM 11:17
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **ANITA ROBINSON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **5:12-cv-00313-AKK** |
| **MICHAEL J. ASTRUE,** | ) | |
| **COMMISSIONER OF SOCIAL** | ) | |
| **SECURITY** | ) | |
| **ADMINISTRATION,** | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Anita Robinson ("Robinson") brings this action pursuant to

sections 205(g) and 1631(c)(3) of the Social Security Act ("the Act"), 42 U.S.C.

§§ 405(g) and 1383(c)(3), seeking review of the final adverse decision of the

Commissioner of the Social Security Administration ("SSA").  Doc. 1.  This court

finds that the Administrative Law Judge's ("ALJ") decision - which has become

the decision of the Commissioner - is not supported by substantial evidence.

Therefore, for the reasons elaborated herein, the court will **REVERSE** and

**REMAND** the decision denying benefits to the ALJ for her to reach a disability

determination based on the medical record and to consult additional physicians to

assess Robinson's condition.

## I. Procedural History

Robinson filed her application for Title II disability insurance benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on May 18, 2009, alleging a disability onset date of August 1, 2008, due, in part, to deterioration of her spine and hip bone. (R. 119-121, 122-128). After the SSA denied her application on June 26, 2009, Robinson requested a hearing on August 13, 2009. (R. 93, 98, 102). At the time of the hearing on July 22, 2010, Robinson was 50 years old with an eleventh grade education, and her past relevant work included working as a labeling machine operator, housekeeper, and janitor. (R. 119, 144, 166-175). Robinson has not engaged in substantial gainful activity since the date of her application. (R. 141).

The ALJ denied Robinson's claims on October 1, 2010, which became the final decision of the Commissioner when the Appeals Council refused to grant review on December 28, 2011. (R. 18-28, 1-6). Robinson then filed this action on January 30, 2012, pursuant to 42 U.S.C. § 405(g). Doc. 1.

## II. Standard of Review

The only issues before this court are whether the record contains substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v.*

*Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the ALJ applied the correct legal standards, *see Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. §§ 405(g) and 1383(c) mandate that the Commissioner's "factual findings are conclusive if supported by 'substantial evidence.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is "reasonable and supported by substantial evidence." *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 849 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the court must affirm the Commissioner's factual findings even if the preponderance of the evidence is against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, it notes that the review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

### III.  Statutory and Regulatory Framework

To qualify for disability benefits, a claimant must show "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 416(i).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrated by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3).

Determination of disability under the Act requires a five step analysis.  20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f).  Specifically, the Commissioner must determine in sequence:

(1)    whether the claimant is currently unemployed;

(2)    whether the claimant has a severe impairment;

(3)    whether the impairment meets or equals one listed by the Secretary;

(4)    whether the claimant is unable to perform his or her past work; and

(5)    whether the claimant is unable to perform any work in the national economy.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  "An affirmative

answer to any of the above questions leads either to the next question, or, on steps

three and five, to a finding of disability.  A negative answer to any question, other

than step three, leads to a determination of 'not disabled.'"  *Id*. at 1030 (citing 20

C.F.R. § 416.920(a)-(f)).  "Once a finding is made that a claimant cannot return to

prior work the burden shifts to the Secretary to show other work the claimant can

do." *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995) (citation omitted).

Lastly, where, as here, a plaintiff alleges disability because of pain, she must

meet additional criteria.  In this circuit, "a three part 'pain standard' [is applied]

when a claimant seeks to establish disability through his or her own testimony of

pain or other subjective symptoms." *Holt v. Barnhart*, 921 F.2d 1221, 1223 (11th

Cir. 1991).  Specifically,

> The pain standard requires (1) evidence of an underlying medical
> condition and either (2) objective medical evidence that confirms the
> severity of the alleged pain arising from that condition or (3) that the
> objectively determined medical condition is of such a severity that it
> can be reasonably expected to give rise to the alleged pain.[1]

*Id*.  However, medical evidence of pain itself, or of its intensity, is not required:

> While both the regulations and the *Hand* standard require objective
> medical evidence of a condition that could reasonably be expected to
> cause the pain alleged, neither requires objective proof of the pain
> itself.  Thus under both the regulations and the first (objectively

---

[1] This standard is referred to as the *Hand* standard, named after *Hand v. Heckler*, 761
F.2d 1545, 1548 (11th Cir. 1985).

identifiable condition) and third (reasonably expected to cause pain alleged) parts of the *Hand* standard a claimant who can show that his condition could reasonably be expected to give rise to the pain he alleges has established a claim of disability and is not required to produce additional, objective proof of the pain itself. *See* 20 CFR §§ 404.1529 and 416.929; *Hale* [*v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)].

*Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991) (parenthetical information omitted) (emphasis added).  Moreover, "[a] claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." *Holt*, 921 F.2d at 1223.  Therefore, if a claimant testifies to disabling pain and satisfies the three part pain standard, the ALJ must find a disability unless the ALJ properly discredits the claimant's testimony.

Furthermore, when the ALJ fails to credit a claimant's pain testimony, the ALJ must articulate reasons for that decision:

It is established in this circuit that if the [ALJ] fails to articulate reasons for refusing to credit a claimant's subjective pain testimony, then the [ALJ], as a matter of law, has accepted that testimony as true. Implicit in this rule is the requirement that such articulation of reasons by the [ALJ] be supported by substantial evidence.

*Hale*, 831 F.2d at 1012.  As such, if the ALJ either fails to articulate reasons for refusing to credit the plaintiff's pain testimony, or if the ALJ's reasons are not supported by substantial evidence, the court must accept as true the pain testimony of the plaintiff and render a finding of disability.  *Id*.

## IV.  The ALJ's Decision

In performing the five step analysis, the ALJ initially determined that Robinson met the insured status requirements of the Act through September 30, 2012.  (R. 20).  Moving to the first Step, the ALJ found that Robinson engaged in substantial gainful activity between January and April 2009, *i.e.*, after her alleged onset date.  However, because there was a continuous 12-month period during which Robinson had not engaged in substantial gainful activity, the ALJ determined that Robinson met Step One.  *Id.*  Next, the ALJ found that Robinson satisfied Step Two because she suffered from the severe impairments of "degenerative disc disease and joint pain in pelvis."  (R. 21). The ALJ then proceeded to the next step and found that Robinson failed to satisfy Step Three because she "does not have any impairments or combination of impairments that meets or medically equals one of the listed impairments."  (R. 22).  Although the ALJ answered Step Three in the negative, consistent with the law, *see McDaniel*, 800 F.2d at 1030, the ALJ proceeded to Step Four, where she determined that Robinson

> has the residual functional capacity ["RFC"] to perform light work... except she would be limited to occasional postural maneuvers such as balancing, stooping, bending, crouching, crawling, and climbing. Additionally, she would be limited to occasional walking and standing, meaning 4 out of 8 hours.

(R. 22).  Moreover, in light of Robinson's RFC, the ALJ held that Robinson is

"unable to perform any past relevant work."  (R. 26).  Lastly, in Step Five, the ALJ

considered Robinson's age, education, work experience, and RFC and determined

"there are jobs that exist in significant numbers in the national economy that

[Robinson] can perform."  *Id.*  Therefore, the ALJ found that Robinson "has not

been under a disability, as defined in the Social Security Act, from August 1,

2008, through the date of this decision."  (R. 27).

## V.  Analysis

The court turns now to Robinson's two contentions of error: that the ALJ

(1) failed to provide substantial evidence to support her decision to assign "little

weight" to treating physician Richard Bucco, M.D.'s opinion, and (2) misapplied

the pain standard.  *See* doc. 8 at 1-15.  The court addresses each contention in turn.

A.    Alleged failure to provide substantial evidence for determination that
      Dr. Bucco's opinion only entitled to "little weight"

"It is well-established that 'the testimony of a treating physician must be

given substantial or considerable weight *unless* "good cause" is shown to the

contrary.'"  *Crawford v. Comm'r of Social Security*, 363 F.3d 1155, 1159 (11th

Cir. 2004) (emphasis added) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440

(11th Cir. 1997)).  *See also* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  "Good

cause" exists when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Additionally, the "ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Reversal is warranted here because the ALJ failed to articulate "good cause" for her decision to give "little weight" to treating physician Dr. Bucco's opinion. (R. 23). Specifically, the ALJ found that (1) Dr. Bucco appeared to have "relied quite heavily on the subjective report of symptoms and limitations provided by [Robinson] herself, and seemed to uncritically accept as true most, if not all, of what [Robinson] reported," and (2) "Dr. Bucco's treatment records do not support the limitations he expressed in his opinion." (R. 23). However, a review of Dr. Bucco's treatment records shows that Dr. Bucco based his opinions on his objective physical examinations and MRIs, and that his treatment records support his opinions.

Dr. Bucco treated Robinson beginning in April 2007 for Robinson's general health and chronic pain complaints associated with her lower back, neck, and hip.

(R. 364).  Throughout this treatment, Dr. Bucco consistently stated in his treatment records that Robinson's "pain has been controlled under current strategy," which included use of narcotics, including Lortab.  *See* (R. 366, 224, 227, 231, 233, 236, 242, 250, 307).  However, in July 2010, as part of Robinson's application for benefits, Dr. Bucco responded to a Lumbar Spine Medical Assessment Questionnaire that he called a "disability physical" in which he opined after examining Robinson, that Robinson's pain was disabling and that "[d]espite medical compliance and pain control efforts,[ Robinson] is unable to work."  (R. 363, 364, 366).  Specifically, Dr. Bucco noted that his physical examination revealed that Robinson had "pain in left rib cage area that radiates up into her axillary area[,]...[p]ain in the right inguinal area extending from the anterior superior iliac spine down to the right labial area[,]...pain and stiffness in the neck and thoracic area from C4-T2...[m]uscle pain mostly in the paravertabral area of the mid and lower neck as well as the lower back[,]...pain on palpation of the thoracic facets, moderate pain on L5 lumbar facets, moderate pain on L5 lumbar intervertebral disc bases[,]...moderate pain in right sacrolliac joints corresponding with S1S2[,] Pain radiates down leg with palpation[,] Pain goes down entire right thigh[,] Subjective pain in right sole of the foot."  (R. 365-66).  Dr. Bucco added that steroid injections proved ineffective, that Robinson (1) has joint pain,

swelling, and stiffness, back pain, muscle pain, and neck pain, (2) can walk with a limping gait, (3) can put her socks and shoes on with difficulty, (4) cannot sit for any period of time without having to move due to pain and muscle spasms, (5) is unable to stand for more than 30 minutes, (6) is limited in ambulation to 20 minutes, (7) is unable to push, pull, or lift objects over 5 pounds, (8) cannot bend over and has difficulty squatting and rising from a seated position, and (9) has numbness and tingling in her feet, hands, and right leg. (R. 364-367). Critically, Dr. Bucco added that Robinson's pain and medical conditions affect her mental status, concentration, sex life, ambulation, and sleep. (R. 366).

While the July 2010 assessment on first blush seems contradictory to Dr. Bucco's statements in his treatment notes that Robinson's "pain has been controlled under current strategy," a thorough review of Dr. Bucco's treatment notes shows that they actually support his July 2010 opinions. Robinson regularly visited Dr. Bucco for pain treatment and Dr. Bucco regularly conducted range of motion testing and palpation of Robinson's spine, which showed that Robinson had decreased range of motion due to pain in her back and neck, and pain that radiated down her leg on palpation of her thoracic facets, L5 lumbar facets, and L5 lumbar intervertebral disc bases. (R. 366). Further, Robinson's MRIs showed small disc protrusions and multilevel disc desiccation, which provides some

objective evidence for the pain Robinson alleges.  (R. 262, 318).

Moreover, the court cannot disregard Dr. Bucco's July 2010 assessment because there is no other medical evidence in the record that contradicts Dr. Bucco's opinion or his treatment notes.  In fact, the medical record only has two other unrelated treatment notes from Dr. Thomas Moody, M.D. of the Urology Centers of America, who treated Robinson for a bladder surgery in 2007, (R. 209-220), and Dr. Thomas Cawthon who treated Robinson for chest pain from 2007 til 2010, (R. 368-419).  Further, there are no consultative examinations or reviewing opinions provided in the record.  The only other related evidence is a Physical RFC which is unfavorable to Robinson.  However, the ALJ gave it "no weight" because she found that "the state agency disability specialist opinion that the claimant could perform a wide range of light work...[was completed by] someone with no known medical expertise, and it is deemed to be an adjudicatory document only with no evidentiary weight."  (R. 26, 78-85).

Overall, because Dr. Bucco's treatment notes support his July 2010 opinion that Robinson is disabled and there is no contrary or inconsistent medical evidence in the record, the ALJ failed to provide "good cause" for not giving Dr. Bucco's opinions substantial or considerable weight.  *See Phillips*, 357 F.3d at 1240-41. Therefore, based on *this* medical record, the ALJ's RFC determination was not

supported by substantial evidence.

      B.    <u>Alleged misapplication of the pain standard</u>

      Citing *Hand v. Heckler*, 761 F.2d 1545, 1548 (11th Cir. 1985), Robinson

also asserts that the ALJ misapplied the Eleventh Circuit pain standard and

incorrectly rejected Robinson's complaints of disabling pain.  Doc. 8 at 14.  As a

threshold matter, the court notes that subjective complaints of pain alone are

insufficient to prove disability.  *See* 20 C.F.R. § 416.929(a); *see also Holt*, 921

F.2d at 1223.  Rather, the pain standard requires (1) evidence of an underlying

medical condition and either (2) objective medical evidence that confirms the

severity of the alleged pain arising from that condition or (3) that the objectively

determined medical condition is of such a severity that it can be reasonably

expected to give rise to the alleged pain.  *Id*.  As the ALJ found at Step Two,

Robinson has underlying medical conditions of degenerative disc disease and joint

pain in the pelvis.  (R. 21).  Therefore, Robinson satisfies the first prong of the

pain standard.  As to the second prong, Robinson contends there is objective

evidence in the record confirming the severity of her alleged pain, including her

MRIs and Dr. Bucco's physical examinations.  Doc. 8 at 17.  Because Robinson's

testimony concerning her medical condition is supported by the medical record,

which the ALJ did not dispute, Robinson asserts that her testimony alone is

sufficient to support a finding of disability, *see Holt*, 921 F.2d at 1223, and that

the ALJ's failure to properly discredit Robinson's testimony and articulate reasons

for doing so is reversible error, *see Hale*, 831 F.2d at 1012.

The ALJ found that Robinson failed to meet the second prong of the three-

part pain standard because the "[m]edical evidence shows that [Robinson] has

underlying medical conditions, but it does not support her allegations of severe

and chronic limitation of function to the degree that it would preclude the

performance of all substantial gainful activity." (R. 25-26).  The ALJ proffered

three reasons for her finding: (1) Robinson engaged in work activity after her

alleged onset date, (2) Robinson cared for her grandchildren (ages 7 and 10), a

task the ALJ described as both "physically and emotionally demanding," and (3)

Robinson only obtained routine and conservative treatment for her allegedly

disabling impairments, and the medications effectively controlled Robinson's

symptoms.  (R. 26).  The court finds that this evidence is not substantial enough

such that "a reasonable person would accept [it] as adequate to support [the]

conclusion" that Robinson's pain complaints have no credibility.  *See Martin*, 849

F.2d at 1529.

As it relates to the first reason the ALJ articulated, *i.e.*, Robinson's work

activity, this contention falls short because even the ALJ found that the work did

not constitute disqualifying substantial gainful activity. (R. 26).  Moreover, Robinson stated that she only worked 10-12 hours a week, that she was in pain afterwards, and that her sister did the heavier tasks of the housecleaning job.  (R. 138, 59-60).  Therefore, the court finds that Robinson's limited work activity is insufficient to discredit Robinson's complaints of pain.

Likewise, the ALJ's second reason, *i.e.*, caring for grandchildren, does not necessarily provide substantial evidence of physically or emotionally demanding activity.  In fact, Robinson testified that the children cared for themselves with some supervision, including bathing and dressing themselves and preparing their own breakfast cereal.  (R. 68, 70).  Further, there is nothing in the record that supports the finding that the *actual* activity Robinson engaged in was physically or emotionally demanding.

Finally, as to the ALJ's third reason, while there is evidence that Robinson's medication alleviates her pain, the record also indicates that Robinson only obtained partial relief.  For example, Robinson regularly complained of pain, causing Dr. Bucco to increase her Lortab prescription.  (R. 259, 228).  Despite the increase, Dr. Bucco opined that Robinson still suffered from disabling pain.  (R. 364).  On remand, the evidence regarding Robinson's pain medication regimen and how well it alleviates her pain may require further development in the record.

However, the current record does not substantially support the conclusion that Robinson's pain complaints are not credible.

In short, because Robinson has established that she suffers from a condition that one can reasonably expect to give rise to the pain she alleges and there is objective proof of the condition, including MRIs and physical exams, and because the ALJ failed to articulate valid reasons to discredit Robinson's testimony, the ALJ's finding that Robinson's pain complaints were not credible is not supported by substantial evidence.

## VI.  Conclusion

Based on the foregoing, the court concludes that the ALJ's determination is not based on substantial evidence.  Therefore, the Commissioner's final decision is **REVERSED** and **REMANDED** for the ALJ to make a disability determination based on the medical record, and to consult additional physicians, as necessary, to assess Robinson's condition.  Upon remand, the ALJ is charged with finding an RFC consistent with the medical evidence available to the ALJ such that Robinson's impairments are properly assessed.  A separate order in accordance with the memorandum of decision will be entered.

**Done** the 5th day of November, 2012.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE